# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# CHATTANOOGA DIVISION

| | |
|---|---|
| **CINCINNATI INSURANCE COMPANY** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | No. _____ |
| **v.** ) | |
| ) | |
| **HERMAN GRANT CO., INC.** ) | |
| ) | |
| **Defendant.** ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Comes now the plaintiff, Cincinnati Insurance Company ("Cincinnati") pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, and would allege the following as its Complaint for Declaratory Judgment against the defendant, Herman Grant Co., Inc. ("Herman Grant"):

### I. THE PARTIES

1. Cincinnati is an insurance company incorporated under the laws of the State of Ohio, with its principal place of business located in Fairfield, Ohio. Cincinnati is thus a citizen and resident of the State of Ohio for purposes of 28 U.S.C. § 1332.

2. The defendant, Herman Grant, is an active Tennessee for-profit corporation having its principal place of business at 1100 Ashmore Avenue, Chattanooga, Tennessee 37415-6638. Herman Grant may be served through its registered agent for service of process, Paula G. Shuford, 1100 Ashmore Avenue, Chattanooga, Tennessee 37415-6638. Herman Grant is thus a citizen and resident of the State of Tennessee for purposes of 28 U.S.C. § 1332.

1

## II. VENUE AND JURISDICTION

3. This case is brought pursuant to the Declaratory Judgment Act as codified in 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, and the request of Cincinnati that this Court issue a declaration as to the rights, status, and legal relationships between it and the defendant as established by Commercial General Liability Policy No. MFG 001 11, which Cincinnati issued to Herman Grant, a Tennessee insured with its principal place of business in Chattanooga, Tennessee. Accordingly, venue is proper in this Court and in this Division pursuant to 28 U.S.C. §§ 1391 and 123.

4. Jurisdiction exists in this Court pursuant to the provisions of 28 U.S.C. § 1332, and the amount in controversy exceeds the sum of Seventy-Five Thousand and No/100 Dollars ($75,000.00), exclusive of interest and costs.

5. An actual controversy exists between Cincinnati and Herman Grant within the meaning of 28 U.S.C. § 2201, and this Honorable Court is vested with the power in the instant case to declare and adjudicate the rights and legal relationships of Cincinnati and Herman Grant with respect to the issues raised herein.

## III. FACTS

6. On June 17, 2016, a Wisconsin limited liability company named Superior Silica Sands, LLC ("Silica Sands") filed a complaint in the Circuit Court of Barron County Wisconsin under docket number 2016CV000192, which named Herman Grant as one of the defendants (hereinafter referred to as the "underlying complaint"). The underlying complaint is attached hereto as Exhibit A.

7. In the underlying complaint, Silica Sands alleges it is in the business of mining and selling sand. It also alleges that it entered into a contract with a general

2
CT Herman Grant Comp 160803
Case 1:16-cv-00369-TRM-SKL   Document 1   Filed 09/08/16   Page 2 of 18   PageID #: 2

contractor in the summer of 2012 for a dry sand processing plant for use in that business.

8. The general contractor is alleged to have entered into an agreement with Herman Grant, whereby Herman Grant was to purportedly design and build the sand dryer to be incorporated into the sand plant.

9. Silica Sands alleges the sand dryer began to have problems almost immediately after substantial completion of the sand plant.

10. The construction of the sand plant is alleged to have been substantially completed on or about December 15, 2012.

11. Silica Sands purports it notified Herman Grant of the defects with the sand dryer on multiple occasions between December 15, 2012 and December 15, 2013 (referred to in the underlying complaint as the warranty period). Specifically, Silica Sands claims it notified Herman Grant that the sand dryer's wrapper bands or plates, tire spacer blocks, steel tires, flightings, and gear box were defective. It also claims that it notified Herman Grant that the sand dryer's drive assembly was defective.

12. Herman Grant is purported to have ignored Silica Sands' complaints in addition to refusing to inspect or address the reported defects.

13. Eventually, Silica Sands hired an engineering firm to inspect the sand dryer and provide a report on the same. The engineer concluded the sand dryer was unstable and in need of modifications.

14. Silica Sands alleges it reported the engineer's findings to Herman Grant, but that Herman Grant refused to inspect the sand dryer or make the recommended modifications and repairs.

15. Over the next year (mid-2013 to mid-2014) Silica Sands engaged in communications with Herman Grant regarding the defects in the sand dyer. Silica Sands purports Herman Grant never inspected or offered to repair the sand dryer; rather, it denied responsibility and would only provide replacement parts if Silica Sands paid for them.

16. On or around June 18, 2014, the sand dryer's steel tires failed. Silica Sands believes the failure of the steel tires was caused by the same defects and problems that it had notified Herman Grant of during the warranty period (December 15, 2012 and December 15, 2013).

17. The tire failure was reported to Herman Grant, but they allegedly refused to inspect or repair the dryer.

18. Silica Sands was then "forced to engage" the engineering firm to repair the sand dryer so that it could fully resume operations at the sand plant.

19. Silica Sands asked for damages in the form of repair and replacement expenses (presumably to a defective sand dryer), lost revenue, lost profits, lost sales, and business interruption.

20. Herman Grant tendered the underlying complaint to Cincinnati for defense and Cincinnati is participating in the defense under Reservation of Rights.

21. Cincinnati issued policy MFG 001 11 40 (the "policy") to Herman Grant for the policy period beginning July 1, 2013. The policy is attached hereto as Exhibit B.

22. The policy provided Commercial General Liability and Umbrella coverage, but only pursuant to express terms, provision, conditions and exclusions.

23. The Commercial General Liability Coverage ("CGL") provided the following insuring agreement:

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.  Insuring Agreement**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        (1)    The amount we will pay for damages is limited as described in **SECTION III – LIMITS OF INSURANCE**; and

        (2)    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY; SECTION I - COVERAGES, COVERAGE B. PERSONAL AND ADVERTISING LIABILITY;** or medical expenses under **SECTION I - COVERAGES, COVERAGE C. MEDICAL PAYMENTS.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.**

    **b.**    This insurance applies to "bodily injury" and "property damage" only if:

        **(1)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

> **(2)** The "bodily injury" or "property damage" occurs during the policy period; and
>
> **(3)** Prior to the "coverage term" in which "bodily injury" or "property damage" occurs, you did not know, per Paragraph 1.d below, that the "bodily injury" or "property damage" had occurred or had begun to occur, in whole or in part.

24. For coverage to exist under the above-referenced insuring agreement, Silica Sands' claims against Herman Grant must assert "bodily injury" or "property damage" within the policy period caused by an "occurrence". Those terms are defined by the policy as follows:

> **4.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
>
> ***
>
> **16.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
>
> ***
>
> **20.** "Property damage" means:
>
> **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

25. There is no claim for "bodily injury" in the underlying complaint.

26. The alleged costs to repair or replace the sand dryer do not constitute "property damage" as required for coverage to apply.

27. Even if there was a claim for "property damage", any such "property damage" did not occur during the policy period.

6

28. The policy provided coverage beginning July 1, 2013. However, the sand dryer was designed, manufactured, and put to use well before that date and was allegedly defective before that date.

29. Moreover, the policy expressly provided it does not apply to any allegation of "property damage" if the insured knew prior to the coverage term that the "property damage" had "occurred or had begun to occur, in whole or in part."

30. The insuring agreement specifically references when an insured is deemed to know about "property damage" prior to the coverage term as follows:

> **d.** You will be deemed to know that "bodily injury" or "property damage" has occurred at the earliest time when any "authorized representative":
>
> **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;
>
> **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage";
>
> **(3)** First observes, or reasonably should have first observed, the "bodily injury" or "property damage";
>
> **(4)** Becomes aware, or reasonably should have become aware, by any means other than as described in **(3)** above, that "bodily injury" or "property damage" had occurred or had begun to occur; or
>
> **(5)** Becomes aware, or reasonably should have become aware, of a condition from which "bodily injury" or "property damage" is substantially certain to occur.

31. In the underlying complaint, Herman Grant was alleged to have had knowledge of the damage before July 1, 2013 (the date the coverage period began). Silica Sands specifically alleged it "repeatedly notified Herman Grant of defects with the Sand Dryer" during the warranty period, which began December 15, 2012.

7
CT Herman Grant Comp 160803
Case 1:16-cv-00369-TRM-SKL   Document 1   Filed 09/08/16   Page 7 of 18   PageID #: 7

32. Because Herman Grant had knowledge of the defects with the sand dryer before the policy period began on July 1, 2013, to the extent any "property damage" was claimed, Herman Grant's knowledge, even in part, bars coverage.

33. Any damages claimed by Silica Sands against Herman Grant were already in progress at the beginning of the Cincinnati policy period and barred from coverage under the policy.

34. In addition and/or in the alternative, the policy also contains exclusions which preclude coverage for the claims advanced in the underlying complaint, even if they were covered under the insuring agreement. The following exclusions are applicable and preclude coverage:

**2.     Exclusions**

This insurance does not apply to:

**a.     Expected Or Intended Injury**

"Bodily injury" or "property damage" which may be reasonably expected or intended to result from the intentional or criminal acts of the insured, even if the injury or damage is of a different degree or type than actually expected or intended. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b.     Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)**     That the insured would have in the absence of the contract or agreement; or
**(2)**     Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the

8

execution of the contract or agreement. When a claim for such "bodily injury" or "property damage" is made, we will defend that claim provided the insured has assumed the obligation to defend such claim in the "insured contract". Such defense payments will not reduce the limits of insurance.

*   *   *

**j.   Damage to Property**

"Property damage" to:

**(1)** Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon. If the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you:

**(4)** Personal property in the care, custody or control of an insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

*   *   *

**k.   Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.   Damage To Your Work**

9

CT Herman Grant Comp 160803
Case 1:16-cv-00369-TRM-SKL   Document 1   Filed 09/08/16   Page 9 of 18   PageID #: 9

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.  Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

35.  In addition, the policy provided the following policy obligation:

**SECTION IV COMMERCIAL - GENERAL LIABILITY CONDITIONS**

**2.  Duties in the Event of Occurrence, Offense, Claim or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or a "personal and advertising injury" offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;
**(2)** The names and addresses of any injured persons and witnesses; and
**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

10

CT Herman Grant Comp 160803
Case 1:16-cv-00369-TRM-SKL   Document 1   Filed 09/08/16   Page 10 of 18   PageID #: 10

> **b.** If a claim is made or "suit" is brought against any insured, you must:
>
>> **(1)** Immediately record the specifics of the claim or "suit" and the date received; and
>> **(2)** Notify us as soon as practicable.
>
>> You must see to it that we receive written notice of the claim or "suit" as soon as practicable.
>
> **c.** You and any other involved insured must:
>
>> **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
>> **(2)** Authorize us to obtain records and other information;
>> **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and
>> **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.
>
> **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

36. The above provisions require the insured to provide Cincinnati notice "as soon as practicable" in the event of a potential claim or suit.

37. Herman Grant was alleged to have known about the claim for an allegedly defective sand dryer immediately after it was put to use in December 2012. However, Cincinnati was only recently informed of the issue on or about May 3, 2016.

38. This notice was late, and thus in violation of the policy's conditions.

39. Cincinnati has been prejudiced by this late reporting.

40. As noted above, the policy also provided umbrella coverage. The insuring agreement of the umbrella policy provides as follows:

**SECTION I – COVERAGES**

11

A. **Insuring Agreement**

 1. We will pay on behalf of the insured the "ultimate net loss" which the insured is legally obligated to pay as damages for "bodily injury", "personal and advertising injury" or "property damage" to which this insurance applies:

  a. Which is in excess of the "underlying insurance"; or

  b. Which is either excluded or not insured by "underlying insurance."

 2. This insurance applies to "bodily injury", "personal and advertising injury" or "property damage" only if:

  a. The "bodily injury", "personal and advertising injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory" and

  b. The "bodily injury" or "property damage" occurs during the policy period shown in the Declarations; or

  c. The "personal and advertising injury" results from an "occurrence" that takes place during the policy period shown in the Declarations; and

  d. Prior to the "coverage term" in which "bodily injury" or "property damage" occurs, or a "personal and advertising injury" offense is committed, you did not know, per Paragraph 5. below, that the "bodily injury" or "property damage" had occurred or had begun to occur, in whole or in part, or that the "personal and advertising injury" offense had been committed or had begun to be committed, in whole or in part.

41. For coverage to exist under the umbrella policy's insuring agreement, Silica Sands' claims against Herman Grant must assert "property damage" caused by an "occurrence" occurring during the policy period.

42. The umbrella policy provides no coverage for the costs to repair or replace the sand dryer, and, as such is not "property damage" as defined under the umbrella policy and applicable law. Even if there was a claim for "property damage", any such

12

damage did not occur during the policy period for the same reasons as discussed above.

43. In addition and/or in the alternative, even if there was a claim against Herman Grant for "property damage" that was not known prior to the policy period, several policy exclusions contained in the Umbrella coverage would apply and bar coverage, including:

> **3. Contractual Liability**
>
> Any liability for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for "bodily injury", "personal and advertising injury" or "property damage":
>
> **a.** That the insured would have in the absence of the contract or agreement; or
>
> **b.** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury", "personal and advertising injury" or "property damage" occurs subsequent to the execution of the contract or agreement.
>
> **4. Damage to Impaired Property or Property Not Physically Injured**
>
> "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
>
> a. A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
>
> b. A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
>
> This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.
>
> **5. Damage to Property**

13
CT Herman Grant Comp 160803
Case 1:16-cv-00369-TRM-SKL   Document 1   Filed 09/08/16   Page 13 of 18   PageID #: 13

"Property damage" to property owned by any insured, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property.

\* \* \*

7. **Damage to Your Work**

   "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

   This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

\* \* \*

13. **Expected or Intended Injury**

    "Bodily injury" or "property damage" which may reasonably be expected to result from the intentional or criminal acts of the insured or which is in fact expected or intended by the insured, even if the injury or damage is of a different degree or type than actually intended or expected.

\* \* \*

44. Similar to the CGL coverage, the Umbrella following policy obligation:

    4. **Duties in the Event of Occurrence, Claim or Suit**

       a. You must see to it that we are notified as soon as practicable of an "occurrence" which may result in a claim. To the extent possible, notice should include:

          **(1)** How, when and where the "occurrence" took place;

          **(2)** The names and addresses of any injured persons and witnesses; and

          **(3)** The nature and location of any injury or damage arising out of the "occurrence".

14

     This requirement applies only when the "occurrence" is known to an "authorized representative."

  **b.** If a claim is made or "suit" is brought against any insured that is likely to involve this Coverage Part, you must:

    **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

    **(2)** Notify us as soon as practicable.

    This requirement will not be considered breached unless the breach occurs after such claim or "suit" is known to an "authorized representative".

  **c.** You and any other involved insured must:

    **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

    **(2)** Authorize us to obtain records and other information;

    **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

    **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be

    liable to the insured because of injury or damage to which this insurance may also apply.

  **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

45. The above provisions in the Umbrella coverage require the insured to provide Cincinnati notice "as soon as practicable" in the event of a potential claim or suit.

15
CT Herman Grant Comp 160803
Case 1:16-cv-00369-TRM-SKL   Document 1   Filed 09/08/16   Page 15 of 18   PageID #: 15

46. Herman Grant was alleged to have known about the claim since December 2012, but only informed Cincinnati of the claim on or about May 3, 2016.

47. This notice was late, in violation of the Umbrella policy's conditions, and prejudiced Cincinnati.

## IV. DECLARATORY RELIEF

48. Cincinnati avers and alleges that neither the CGL or Umbrella coverages of the policy provides any coverage for any of the damages alleged by Silica Sands in the underlying complaint.

49. Cincinnati asserts that Herman Grant is not entitled to any insurance coverage, including defense or indemnity, under the policy because Silica Sands' claims do not constitute "bodily injury" or "property damage" caused by an "occurrence" with such damage occurring during the policy period as those terms are defined by the policy and under applicable law.

50. Cincinnati asserts that Herman Grant is not entitled to any insurance coverage, including defense or indemnity, under the policy because Herman Grant knew of Silica Sands' claims, in whole or in part, prior to the policy's coverage term.

51. Consequently, Cincinnati avers that it owes no coverage to Herman Grant for any injury to Silica Sands arising from the purportedly defective sand dryer. Thus, Cincinnati requests a declaration from the Court that Silica Sands' claims do not constitute claims for "bodily injury" or "property damage" caused by an "occurrence" occurring during the policy period as those terms are defined by the policy and under applicable law; and, therefore, Cincinnati is under no duty to defend or indemnify such claims.

16
CT Herman Grant Comp 160803
Case 1:16-cv-00369-TRM-SKL   Document 1   Filed 09/08/16   Page 16 of 18   PageID #: 16

52. Cincinnati further avers that Herman Grant failed to comply with the "Duties in the Event of Occurrence, Claim or Suit" provisions of the policy.

53. Cincinnati further avers it is under no duty to duty defend Herman Grant as Cincinnati's duty to defend is triggered only if there is an allegation in the lawsuit against an insured party covered under the policy. As there is no coverage under the policy for the allegations of the lawsuit against Herman Grant, Cincinnati is under no duty to defend Herman Grant.

54. Cincinnati also avers it is under no duty indemnify because if there is no duty to defend, there is no duty to indemnify.

**WHEREFORE**, the plaintiff, Cincinnati Insurance Company, prays as follows:

1. That the defendant be required to answer and appear herein;

2. That this Honorable Court issue a declaration that:

    a. There is no coverage obligation under the policy for the claims made against Herman Grant in the underlying action;

    b. Herman Grant failed to comply with the "Duties in the Event of Occurrence, Claim or Suit" provision of the policy;

    c. Cincinnati has no duty to defend Herman Grant in the underlying action;

    d. Cincinnati has no duty to indemnify Herman Grant in the underlying action; and,

    e. Cincinnati is entitled to withdraw its defense of Herman Grant provided under Reservation of Rights.

17
CT Herman Grant Comp 160803
Case 1:16-cv-00369-TRM-SKL   Document 1   Filed 09/08/16   Page 17 of 18   PageID #: 17

3. For such further legal and equitable relief as this Court deems just and proper.

Respectfully submitted,

   /s E. Jason Ferrell
**E. JASON FERRELL**
Registration No. 24425
Attorney for Plaintiff, Cincinnati Insurance Company

**BREWER, KRAUSE, BROOKS & CHASTAIN, PLLC**
P. O. Box 23890
Nashville, TN 37202-3890
PHONE: (615) 256-8787, Ext. 116
DIRECT: (615) 630-7716
E-MAIL: jferrell@bkblaw.com