# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT CHATTANOOGA

| | | |
|---|---|---|
| CINCINNATI INSURANCE COMPANY, | ) | |
| | ) | Case No. 1:16-cv-369 |
| *Plaintiff*, | ) | |
| | ) | Judge Travis R. McDonough |
| v. | ) | |
| | ) | Magistrate Judge Susan K. Lee |
| HERMAN GRANT CO., INC., | ) | |
| | ) | |
| *Defendant*. | ) | |

| | | |
|---|---|---|
| COLUMBIA NATIONAL INSURANCE COMPANY, | ) | Case No. 1:17-cv-116 |
| | ) | |
| *Plaintiff*, | ) | Judge Travis R. McDonough |
| | ) | |
| v. | ) | Magistrate Judge Susan K. Lee |
| | ) | |
| HERMAN GRANT CO., INC., | ) | |
| | ) | |
| *Defendant*. | ) | |

## MEMORANDUM OPINION

Before the Court are motions to dismiss filed by Defendant Herman Grant Co., Inc., in each of these consolidated cases. (Case No. 1:16-cv-369, Doc. 13; Case No. 1:17-cv-116, Doc. 14.)[1] For the reasons discussed herein, the Court will **GRANT** the motions to dismiss.

---

[1] The Court previously consolidated these cases for all purposes other than trial based on a finding that there exists a significant overlap between the legal and factual issues in the two actions. (Doc. 29.) Unless otherwise indicated, all citations refer to the lead case, Case No. 1:16-cv-369.

I. **BACKGROUND**

   A. **The Policies**

Defendant Herman Grant Co., Inc. ("Herman Grant") is a Tennessee corporation with its principal place of business in Chattanooga, Tennessee. (Doc. 1.) Plaintiffs are insurance companies that provided commercial general liability ("CGL") and umbrella coverage to Herman Grant during consecutive policy periods beginning in 2012 (collectively "the Policies"). Plaintiff Columbia National Insurance Company ("Columbia") issued CGL and umbrella policies to Herman Grant for the policy period from July 1, 2012, to July 1, 2013. (Case No. 1:17-cv-116, Doc. 1, at 5.) Plaintiff Cincinnati Insurance Company ("Cincinnati") issued CGL and umbrella policies to Herman Grant for the policy periods beginning July 1, 2013. (Doc. 1, at 4.) The Policies are governed by Tennessee law and generally cover Herman Grant for "bodily injury" and "property damage" caused by "occurrences" that took place within the coverage territory during the coverage period. (*Id.* at 5–6; *see also* Case No. 1:17-cv-116, Doc. 1-1, at 23.)

   B. **The Underlying Transaction**

In the summer of 2012, Superior Silica Sands, LLC ("Silica Sands") contracted with a Wisconsin company called Market & Johnson Inc. ("Market & Johnson") to serve as general contractor over construction of a dry sand processing plant used in hydraulic fracturing. (Case No. 1:17-cv-116, Doc. 1, at 3.) Market & Johnson then subcontracted with Herman Grant to design and construct a critical portion of the dry sand processing plant—the sand dryer. (*Id.*) Herman Grant finalized the sand dryer project in January 2013. (*Id.*; *see also* Doc. 13-1, at 6.) According to Silica Sands, it began noticing defects in the sand dryer almost immediately and began notifying Herman Grant of those defects. (Doc. 1, at 3.) Specifically, "Silica Sands claims it notified Herman Grant that the sand dryer's wrapper bands or plates, tire spacer blocks,

steel tires, flightings, and gear box were defective." (*Id.*)  Silica Sands alleges it attempted to engage Herman Grant to resolve those defects in the sand dryer over the course of the next few years.  (*See* Doc. 1, at 3–5; *see also* Doc. 13-1, at 7–15.)

On June 17, 2016, Silica Sands filed a complaint in the Circuit Court for Barron County, Wisconsin, against Herman Grant and Columbia (the "Wisconsin Action").  (Doc. 1-1.)  Although Cincinnati was not initially named as a defendant in the Wisconsin Action, Silica Sands amended its complaint and added Cincinnati as a defendant on September 12, 2016.  (Docs. 1-1, 13-1.)  In its amended complaint, Silica Sands alleges claims for breach of contract, breach of warranty, negligence, and unjust enrichment against Herman Grant and liability claims against Columbia and Cincinnati.  (Doc. 13-1.)

On September 8, 2016, and April 27, 2017, respectively, Cincinnati and Columbia (collectively "Plaintiffs") filed their actions in this Court against Herman Grant pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, and Rule 57 of the Federal Rules of Civil Procedure.  (Doc. 1; Case No. 1:17-cv-116, Doc. 1.)  Plaintiffs seek declaratory judgments that Herman Grant is not entitled to coverage in the Wisconsin Action under the Policies.  (Doc. 1, at 16; *see also* Case No. 1:17-cv-116, Doc. 1, at 11–12.)  Herman Grant has filed motions to dismiss in both actions.  (Doc. 13; Case No. 1:17-cv-116, Doc. 14.)  Plaintiffs have responded (Doc. 20; Case No. 1:17-cv-116, Doc. 17) and Herman Grant has replied (Doc. 21).  The motions to dismiss are now ripe for review.

## II.  ANALYSIS

Herman Grant moves to dismiss Plaintiffs' complaints, arguing that the Court should decline to exercise its discretion and decline to declare the rights of the parties under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02 (the "DJA").  The DJA gives district courts

the discretion to hear actions seeking to declare the rights or legal relations of interested parties that fall within its purview. 28 U.S.C. § 2201 ("[I]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."). "[F]ederal district courts in particular, have unique and substantial discretion in deciding whether to declare the rights of litigants." *Western World Ins. Co. v. Hoey*, 773 F.3d 755, 758 (6th Cir. 2014). The sound administration of that discretion "calls for the exercise of 'judicial discretion, hardened by experience into rule.'" *Id.* at 759 (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289 (1995)).

The Sixth Circuit has articulated a series of factors, commonly known as the *Grand Trunk* factors, to utilize in determining whether to exercise discretion to hear a case under the DJA. *Grand Trunk W.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984). One of these factors has been expanded into three sub-factors. *Hoey*, 773 F.3d at 759. Specifically, the Court should consider:

>  (1) [w]hether the declaratory action would settle the controversy;
>  (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
>  (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata;"
>  (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach upon state jurisdiction; [which is determined by asking]
>     a. whether the underlying factual issues are important to an informed resolution of the case;
>     b. whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
>     c. whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action; and
>  (5) whether there is an alternative remedy which is better or more effective.

*Id.*

## A. Settlement of the Controversy & Clarification of the Legal Relations at Issue

The first and second *Grand Trunk* factors are closely linked and are often considered in connection with one another. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 557 (6th Cir. 2008) ("[I]t is almost always the case that if a declaratory judgment action will settle the controversy, then it will clarify the legal relations at issue."). In the context of insurer suits to determine policy liability, two lines of precedent have developed. *See Hoey*, 773 F.3d at 760–61; *see also Flowers*, 513 F.3d 546. Under the first line, courts have concluded that a declaratory judgment "settles the controversy" if it does not resolve the underlying state action but does resolve the insurance coverage controversy. *See Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003); *see also Flowers*, 513 F.3d at 555–58. Similarly, courts have held that the declaratory judgment "clarifies the legal relations at issue" if it clarifies the relationship between the insured and insurer, even if it does not clarify the legal relationships in the underlying action. *West Am. Ins. Co. v. Prewitt*, 208 F. App'x 393, 397 (6th Cir. 2006).

Conversely, in the second line of cases, courts have concluded that the declaratory judgment action fails to "settle the controversy" unless it also satisfies the issues addressed in the underlying state court action. *See Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 812–13 (6th Cir. 2004); *see also Flowers*, 513 F.3d at 555–58. Courts following this line have also found that, though a declaratory judgment may clarify the legal relationship between the parties to the insurance contract, "the judgment [does] not clarify the legal relationship between [the parties] in the underlying state action." *Bituminous*, 373 F.3d at 814. Although it has not conclusively explained this divergence in case law, the Sixth Circuit has attributed the split to competing policy considerations and "differences in factual circumstances presented by different

5

cases." *Hoey*, 773 F.3d at 760 (quoting *Flowers*, 513 F.3d at 555–56); *see also Auto-Owners Ins. Co. v. Sinor*, No. 1:11-cv-27, 2011 WL 3489679 at *3–4 (E.D. Tenn. Aug. 9, 2011).

Courts have consistently found that certain factual circumstances disfavor hearing declaratory judgment actions such as these. Often, courts have focused on the presence, or lack thereof, of particularly critical parties from one action or another as well as on whether the scope of insurance coverage was at issue in the underlying action. *See Bituminous*, 373 F.3d at 813–14 (highlighting that the plaintiff in the underlying state action was not a party to the federal action, such that any federal judgment "would not be binding as to [the plaintiff] and could not be res judicata in the tort action"); *see also Northland Ins. Co.*, 327 F.3d at 454 (affirming a district court's exercise of jurisdiction when the plaintiffs in the federal action were not a party to the underlying action and neither the scope of insurance coverage nor the obligation to defend was before the state court).

In this instance, the first and second factors weigh strongly against hearing these cases. Neither the primary plaintiff, Silica Sands, nor any of the other plaintiffs in the Wisconsin action are named in either of the instant actions before this court.[2] Further, Plaintiffs are named defendants in the underlying state action. (Doc. 1-1.) Therefore, if the Court were to exercise its discretion to hear this case, doing so would only have a limited effect on settling the controversy or clarifying the legal relationships because it could introduce unnecessary res judicata issues into the Wisconsin Action. *See, e.g.*, *United Specialty Ins. v. Seidenfaden's LLC*, No. 3:16-cv-0190-CRS-CHL, 2016 WL 6078307, at *5 (W.D. Ky. Oct. 14, 2016). Further, despite Plaintiffs' argument that coverage is not at issue in the Wisconsin litigation (*see, e.g.*, Doc. 20, at 7), review

---

[2] In fact, Cincinnati admits it lacks personal jurisdiction over Silica Sands. (Doc. 20, at 8.)

6

of the complaint from that action reveals otherwise.[3]  Thus, even if the Court exercised its discretion and considered these actions, the collateral liability aspects of the proceedings would continue in the state court regardless of this Court's determination.  *See Allstate v. Mercier*, 913 F.2d 273, 279 (6th Cir. 1990).

### B.  Procedural Fencing and *Res Judicata*

The third *Grand Trunk* factor considers whether the filing of these declaratory judgment actions was motivated by "procedural fencing" or a race for *res judicata* in an attempt to create a preclusive effect on the underlying action.  *Flowers*, 513 F.3d at 558.  District courts are "reluctant to impute an improper motive to a plaintiff where there is no evidence of such in the record."  *Id.* (citing *Travelers*, 495 F.3d at 272).  "[W]hen the plaintiff has filed his claim after the state court litigation has begun, we have generally given the plaintiff 'the benefit of the doubt that no improper motive fueled the filing of [the] action.'"  *Id.* (citing *Bituminous*, 373 F.3d at 814.)

There is no evidence that Plaintiffs have attempted to engage in procedural fencing. Herman Grant suggests that Columbia and Cincinnati filed these actions with an improper motive because the cases were filed either after (Columbia), or immediately prior to (Cincinnati), being named as defendants in the underlying state action.  However, as *Flowers* indicates, even though Plaintiffs clearly had knowledge of the Wisconsin Action prior to filing these actions, the timing of these filings does not evidence improper motive.  *See Flowers*, 513 F.3d at 558. Accordingly, the Court finds that this factor slightly favors hearing the cases.

---

[3] (Doc. 13-1.)  In the underlying action, Silica Sands makes separate liability claims against both Columbia and Cincinnati under Wisconsin's direct action and liability statutes.

### C. Federalism Concerns

The fourth *Grand Trunk* factor concerns principles of federalism and considers whether hearing the case would increase friction between federal and state courts. The Supreme Court has explained that "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495 (1942). To aid in making this determination, the Sixth Circuit has articulated three sub-factors for consideration:

> (1) whether the underlying factual issues are important to an informed resolution of the case;
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
> (3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Bituminous*, 373 F.3d at 814–15 (citing *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000)).

The first sub-factor "focuses on whether the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action." *Flowers*, 513 F.3d at 560. For declaratory judgment actions over insurance contracts, "such questions can sometimes be resolved as a matter of law and do not require factual findings by the state court." *Id.* (internal citations omitted). However, "sometimes resolution of the issues raised in federal court will require making factual findings that might conflict with similar findings made by the state court." *Id.* (internal citations omitted). When the latter is true, "the exercise of jurisdiction [is] inappropriate." *Id.*

The second sub-factor focuses on whether the state or federal court "is in a better position to resolve the issues in the declaratory action." *Id*. Often, federal courts consider state courts better able to resolve the issues when state law controls. *Seidenfaden's LLC*, 2016 WL 6078307, at *5 (citing *Travelers Indem. Co. v. Bowling Green Prof'l Assocs., PLC*, 495 F.3d 266, 272 (6th Cir. 2007)) ("[B]ecause Kentucky law is controlling, we conclude that Kentucky courts are in the better position to apply and interpret its law on these issues."). However, "when an insurance company is not a party to the state court action, and neither the scope of insurance coverage nor the obligation to defend is before the state court . . . a decision by the district court on these issues would not offend principles of comity." *Flowers*, 513 F.3d at 560 (internal citations omitted).

The third sub-factor "focuses on whether the issue in the federal action implicates important state policies and is, thus, more appropriately considered in state court." *Flowers*, 513 F.3d at 561. Generally, "issues of insurance contract interpretation are questions of state law with which the . . . state courts are more familiar and, therefore, better able to resolve." *Id.* (internal citations omitted). "The states regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation." *Id.* (internal citations omitted). "However, not all issues of insurance contract interpretation implicate such fundamental state policies that federal courts are unfit to consider them." *Id.* (citing *Northland*, 327 F.3d at 454).

In his case, the three sub-factors weigh against hearing these cases. While hearing the action could certainly clarify at least some of the coverage issues, there is no question that asserting jurisdiction would increase friction between federal and state courts. *See Chelsea Hearth & Fireplaces, Inc. v. Scottsdale Ins. Co.*, No. 15-cv-12240, 142 F. Supp. 3d 543, 547

(E.D. Mich. Nov. 9, 2015). The pleadings do not highlight any particular factual issues that would require state court resolution for the Court to issue declaratory judgment. However, that does not foreclose such a possibility. In fact, as here, where the underlying contractual project was quite complex—construction of a sand dryer to be used in hydraulic fracturing processes—the Court finds that such an event is quite possible or even likely. *See Mercier*, 913 F.2d at 278–79 (acknowledging that the federal court had a limited amount of information about the underlying tort action and determining that there were necessary facts that would need to be developed in the underlying action in order to settle the ultimate controversy, including the insurance coverage issues).

Further, though the pleadings do not establish that the Wisconsin state court is necessarily better able to resolve the coverage issues, they also do not suggest that this Court is an any more appropriate forum. *See Brillhart*, 316 U.S. at 495. For instance, the cases do not appear to present any novel questions of Wisconsin law and they involve policies that are governed by Tennessee law. However, the cases also present no federal questions, and a single, unified action—which involves all potentially affected parties—already exists in a forum that is at least equally competent to address coverage issues already put before it. *See Omaha Prop. & Cas. Ins. Co. v. Johnson*, 923 F.2d 446, 448 (6th Cir. 1991); *see also Flowers*, 513 F.3d at 560.[4] Finally, as discussed herein, Wisconsin state law clearly emphasizes public policy considerations that encourage resolving insurance disputes that affect Wisconsin entities in a single action.[5] In

---

[4] The Court acknowledges Columbia's argument that the Wisconsin court potentially lacks general personal jurisdiction over it. (Case No. 1:17-cv-116, Doc. 18, at 13–16 (citing *BNSF Railway Co. v. Tyrell*, 137 S. Ct. 810 (2017)).) However, because making such a finding would amount to pure speculation by the Court, the Wisconsin court is in the best position to make such a determination—further supporting the finding that the Wisconsin court is the more appropriate forum at this juncture.

[5] *See infra* Part III(D).

recognition of the Sixth Circuit's clear concern about comity, the Court finds this factor weighs against hearing these cases.

**D. Alternative Remedy**

The fifth *Grand Trunk* factor considers the availability of alternative remedies, such as state declaratory judgments. Generally, "[a] district court should 'deny declaratory relief if an alternative remedy is better or more effective.'" *Flowers*, 513 F.3d at 562 (quoting *Grand Trunk*, 746 F.2d at 326). However, consideration of this factor "must be fact specific, involving consideration of the whole package of options available to the federal declaratory plaintiff." *Id.* Often, courts consider whether "[o]ne of the alternative remedies available to a federal declaratory plaintiff is to seek a declaratory judgment in state court." *Id.* Here, however, the parties have largely focused on another alternative remedy—the direct action.

A "direct action" is "[a] lawsuit by a person claiming against an insured but suing the insurer directly instead of pursuing compensation indirectly through the insured." Black's Law Dictionary (8th ed. 2004). Wisconsin law provides "direct action"[6] and "direct liability"[7] statutes that, when considered together, enable an injured party to sue directly a liability coverage provider for the negligence of the insured. *See* 3 Wis. Prac., Civil Procedure § 304.3 (4th ed.) (Negligence actions and insurers). Within the direct action, Wisconsin law permits a liability insurance company to plead and establish a lack of coverage in a direct action.[8]

---

[6] Wis. Stat. Ann. § 803.04(2).

[7] Wis. Stat. Ann. § 632.24.

[8] At one time, Wisconsin appeared to require an insurer to plead and establish a lack of coverage through the direct action. *See New Amsterdam Casualty Co. v. Simpson*, 300 N.W. 367, 369–70 (Wis. 1941) (establishing that separate declaratory judgment actions against insurers raising coverage issues prior to the determination of the insured's liability to a third party were prohibited); *see also Gulf Underwriters Ins. Co. v. Burris*, 674 F.3d 999, 1005–06 (8th Cir.

11

Here, because of the alternative remedies available to the parties under Wisconsin law, the Court finds this factor weighs heavily against hearing these actions. The parties largely disagree over the extent that Wisconsin's "direct action" statutes apply. (Doc. 14, at 1–3, 5–7 (insisting Wisconsin's direct action statutes *require* that the coverage issues be handled in the Wisconsin state court); Doc. 20, at 3 (relying on *Estates of Briney v. Mr. Heater Corp.*, No. 08-cv-701-bbc, 602 F. Supp. 2d 997 (W.D. Wis. Feb. 25, 2009), to assert that Wisconsin law does not permit a liability insurer to plead and establish a lack of coverage in the direct action itself).) However, Wisconsin law is quite clear. Though *Basten* is explicit that declaratory judgment actions are not barred in these instances under Wisconsin law, it also very unambiguously confirms the state's long-held preference for resolving insurance conflicts in single, unified action that involves all affected parties. *See Gulf Underwriters Ins. Co. v. Burris*, 674 F.3d 999, 1006 (8th Cir. 2012); *see also Fire Ins. Exch. v. Basten*, 549 N.W.2d 690, 696 (Wis. 1996). Further, because Columbia and Cincinnati are joined in the Wisconsin Action, the conditions discussed by the Wisconsin Supreme Court highlighted as potentially appropriate for a declaratory judgment are not present here. *See Burris*, 674 F.3d at 1006. Thus, this factor strongly weighs against hearing these cases.

### E. Balancing the Factors

The Sixth Circuit has advised that the "relative weight" of the factors depends heavily on the "underlying considerations of efficiency, fairness, and federalism," which vary depending on the circumstances of each case. *Hoey*, 773 F.3d at 759. Here, given that four of the five *Grand*

---

2012). However, more recently, Wisconsin has declared that "'the joinder or intervention of all concerned parties followed by bifurcation of the coverage and liability issues . . . is the preferred procedure to determine insurance coverage,' but 'coverage may be determined by . . . a separate declaratory action' when . . . the insurer was not joined in the underlying action." *Burris*, 674 F.3d at 1006 (citing *Fire Ins. Exch. v. Basten*, 549 N.W.2d 690, 696 (Wis. 1996)).

12

*Trunk* factors weigh against hearing these cases, the Court will decline to exercise its jurisdiction over these matters.

## III. CONCLUSION

For the aforementioned reasons, the Court **GRANTS** Herman Grant's motions to dismiss (Case No. 1:16-cv-369, Doc. 13; Case No. 1:17-cv-116, Doc. 14) and **DECLINES** to exercise jurisdiction over this declaratory judgment action. Accordingly, this action will be **DISMISSED WITHOUT PREJUDICE**. Accompanying judgments will issue in each case.

SO ORDERED.

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**